**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| R2 SOLUTIONS LLC, | ) | |
| | ) | CASE NO. 4:21-cv-00092 |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | HON. AMOS L. MAZZANT, III |
| | ) | |
| TARGET CORPORATION, | ) | ███████████ |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT TARGET CORPORATION'S MOTION TO**
**TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)**

# **Table of Contents**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

    A.    R2 has limited ties to the Eastern District of Texas. ...................................... 2

    B.    Target is a Minnesota corporation with no relevant ties to the Eastern District of Texas. ............................................................................................. 3

    C.    The Accused Systems' center of gravity is around the District of Minnesota. ................................................................................................... 4

III.    LEGAL STANDARD ........................................................................................... 6

IV.    ARGUMENT ....................................................................................................... 7

    A.    R2 could have brought this case in the District of Minnesota. ....................... 7

    B.    The District of Minnesota is clearly more convenient. ................................... 8

        i.    The District of Minnesota has absolute subpoena power over non-party witnesses. .................................................................... 8

        ii.    The District of Minnesota is a more convenient location for known witnesses. .................................................................... 9

        iii.    The relevant evidence is in the District of Minnesota and no relevant evidence is in the Eastern District of Texas. ..................... 11

        iv.    R2's co-pending cases in the Eastern District of Texas do not weigh against transferring this case to the District of Minnesota. ........................................................................... 13

        v.    Only the District of Minnesota has a particularized interest. ........... 14

V.    CONCLUSION ................................................................................................... 15

## Table of Authorities[1]

**Page(s)**

<span style="font-variant:small-caps">Federal Cases</span>

*Adaptix, Inc. v. Apple Inc.*,
   2013 WL 12137842 (E.D. Tex. Mar. 28, 2013) ...............................................................13, 14

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013).........................................................................................8

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
   968 F. Supp. 2d 852 (E.D. Tex. 2013).......................................................................................15

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
   2014 WL 11515020 (E.D. Tex. Nov. 7, 2014) ......................................................6, 7, 13, 14

*Balthaser Online, Inc. v. Kimberly-Clark Corp.*,
   2011 WL 1526964 (E.D. Tex. Apr. 20, 2011)....................................................................7, 13

*Evolutionary Intel., LLC v. Apple, Inc.*,
   2013 WL 8360309 (E.D. Tex. Aug. 27, 2013) ..................................................................7, 11

*Groupchatter, LLC v. Itron, Inc.*,
   2016 WL 2758480 (E.D. Tex. May 12, 2016).........................................................................7

*Hoffman v. Blaski*,
   363 U.S. 335 (1960)...................................................................................................................13

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010).................................................................................................15

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)........................................................................7, 9, 11, 15

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) .....................................................................................7, 13

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)............................................................................................9, 12

*In re Hoffman-La Roche Inc.*,
   587 F.3d (Fed. Cir. 2009).................................................................................................14, 15

---

[1]   Unless otherwise noted, all quotations and citations are omitted and all emphasis is added.

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) ................................................................6

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)..........................................................6

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014)........................................................8, 9

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)..........................................................6

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ..........................................................6, 15

*In re Volkswagen of Am., Inc.*,
  545 F.3d (5th Cir. 2008) ............................................................... passim

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009)........................................................13

*Ingeniador, LLC v. Adobe Sys. Inc.*,
  2014 WL 105106 (E.D. Tex. Jan. 9, 2014)................................8, 11, 13

*Ivera Med. Corp. v. Hospira*,
  2011 WL 1882277 (E.D. Tex. Mar. 17, 2011) ...................................7

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
  2011 WL 1235354 (E.D. Tex. Mar. 30, 2011) ...................................7

*Lone Star Document Mgmt., LLC v. Catalyst Repository Sys., Inc.*,
  2013 WL 5496816 (E.D. Tex. Mar. 15, 2013) ...................................7

*Net Navigation Sys., LLC v. Extreme Networks, Inc.*,
  2014 WL 5465449 (E.D. Tex. Oct. 27, 2014) ...................................12

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
  2012 WL 194382 (E.D. Tex. Jan. 23, 2012)........................................7

*Parity Networks, LLC v. Juniper Networks, Inc.*,
  2018 WL 10124889 (E.D. Tex. Sept. 17, 2018) ................................11

*R2 Solutions LLC v. Deezer SA*,
  Case No. 4:21-cv-00090 (filed Jan. 29, 2021)................................14

*R2 Solutions LLC v. Samsung Elecs. Am., Inc.*,
  Case No. 4:21-cv-00089 (filed Jan. 29, 2021) ................................13

*R2 Solutions LLC v. Walmart Inc.*,
    Case No. 4:21-cv-00091 (filed Jan. 29, 2021) ...................................................2, 14

*R2 Solutions LLC v. Workday, Inc.*,
    Case No. 4:21-cv-00093 (filed Jan. 29, 2021) .......................................................14

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
    2009 WL 3784371 (E.D. Tex. Nov. 10, 2009) ........................................................7

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*,
    2019 WL 3082314 (E.D. Tex. July 15, 2019) .........................................................9

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
    2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ..................................................7, 8, 11

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ....................................................7, 13

**FEDERAL STATUTES**

28 U.S.C. § 1400(b) ...................................................................................................7

28 U.S.C. § 1404(a) ...........................................................................................1, 6, 15

**RULES**

Fed. R. Civ. P. 45(c)(1)(B) .........................................................................................8

Local Rule CV-5 .......................................................................................................17

Local Rule CV-7(h) ..................................................................................................17

Rule 16 .....................................................................................................................11

Defendant, Target Corporation ("Target"), hereby moves, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the District of Minnesota.

## I.    INTRODUCTION

This patent infringement case belongs in the District of Minnesota.  The central and essential activities relevant to this lawsuit are the design, research, development, and testing of Target's data analytics system built on Apache Hadoop and the Target.com search engine (collectively, the "Accused Systems").  The relevant employees are in, or around, Target's headquarters in Minneapolis, Minnesota.  Target's longstanding ties to the District of Minnesota give the district a particularized local interest in adjudicating allegations of patent infringement against Target.  Moreover, several non-party witnesses, who have material knowledge of the development of the Accused Systems, reside within 100 miles of the District of Minnesota.

By contrast, no meaningful connection exists here or anywhere in the Eastern District of Texas.  Plaintiff R2 Solutions, LLC ("R2") is a non-practicing entity.  It neither produces nor sells any products. It has no identifiable documents or employees within the Eastern District of Texas.  Indeed, as it stands, R2 has even *forfeited* its right to transact business in Texas.  As matters sit, it is difficult to conceive how the Eastern District of Texas has any interest—let alone a *particularized* interest—in the adjudication of dispute for an ephemeral shell company that could not even be bothered to file the paperwork required by the State of Texas.

Thus, the center of gravity of this case rests squarely within the District of Minnesota, and Target respectfully requests that the Court transfer this action to the District of Minnesota because it is a clearly more convenient venue.

## II.     BACKGROUND

R2 sued Target on January 29, 2021, alleging that the Target Accused Systems—Target's data analytics system built on Apache Hadoop ("Target Big Data") and the Target.com search engine ("Target Search")—infringe U.S. Patent Nos. 8,190,610 ("the '610 Patent"), 8,341,157 ("the '157 Patent"), and 7,698,329 ("the '329 Patent") (collectively, "the Asserted Patents").[2]  On the same day, R2 initiated four other patent-infringement suits in the Eastern District of Texas involving different defendants and substantially different accused systems.[3]  On February 9, 2021, R2 initiated three additional patent-infringement suits in the Eastern District of Texas.

### A.     R2 has limited ties to the Eastern District of Texas.

R2's connection to the Eastern District of Texas is limited.  R2 is a non-practicing entity that does not produce or sell products.  (Ex. A, ¶ 6.)  R2 was formed in 2016 as a limited liability corporation based in Austin, Texas—the Western District of Texas.  (*See* Ex. A, ¶ 7, Ex. E.)  As recently as the end of 2019, R2's managing officer, Paul Reidy, listed an Austin, Texas mailing address.  (*Id.*, Ex. F)  In fact, R2's registered agent is still listed in Austin, Texas.  (*See id.*, ¶ 7, Ex. D.)  On April 29, 2020, R2 filed a certificate of amendment that added a Frisco, TX address at 6136 Frisco Square Blvd. Suite 400, Frisco,

---

[2]   In its complaint, R2 asserts claims 1-5, 17-21, 33-34, and 40-41 of the '610 Patent, claims 1-5 and 7-10 of the '157 Patent, and claims 1-5 of the '329 Patent. (D.I. 1, ¶¶ 37, 46, 55.)  However, R2's purported claim charts, which fail to state any claim of infringement, only address claim 1 of the '610 Patent, claims 1, 5, and 10 of the '157 Patent, and claims 1 and 4 of the '329 Patent. (*See generally* D.I. 1-5, 1-6, 1-7.)

[3]   Of the four cases, only one involves the exact same Asserted Patents.  *See R2 Solutions LLC v. Walmart Inc.*, Case No. 4:21-cv-00091 (filed Jan. 29, 2021).  Moreover, while some of the accused systems are also allegedly built on Apache-based systems. ████████████ ████████████████████████████████████████████████ (*See* Ex. B, ¶ 11.)

TX 75304.[4]  (*See* Ex. A, ¶ 8, Ex. H.)  Thus, R2's purported presence in the Eastern District appears, at best, to be based solely on property tethered to its parent company.[5]  R2 does not have any identifiable employees in the Eastern District of Texas.  (*Id.*, ¶ 6.)  While R2 is registered to do business in Texas, State of Texas records reflect that R2 has forfeited its right to transact business in Texas.  (*Id.*, ¶ 13, Ex. L.)

The named inventors of the Asserted Patents lack any connection to the Eastern District of Texas.  They all live in California.  (*See* D.I. 1-2, 1-3, 1-4.)

### B.   Target is a Minnesota corporation with no relevant ties to the Eastern District of Texas.

Target has no material connection to the Eastern District of Texas.  Target is a Minnesota corporation headquartered in Minneapolis, Minnesota.  (Ex. A, ¶ 14, Ex. M.) All of Target's design, research, development, and testing documents, including the source code, and witnesses related to both Target Big Data and Target Search are outside the Eastern District of Texas.  (Ex. B, ¶¶ 4,6; Ex. C, ¶¶ 4, 8.)  Indeed, no Target documents or witnesses with material information concerning the Accused Systems are located in the Eastern District of Texas.  (Ex. B, ¶ 10; Ex. C, ¶ 11.)  Instead, as discussed below, the documents and witnesses relevant to this case are centered in, or around, the District of Minnesota.

---

[4]   Public documents indicate that R2's parent company, Acacia Research Group, owns the property at 6136 Frisco Square Blvd #400, Frisco, TX 75034.  (*See* Exhibit A, ¶ 10, Ex. I.)

[5]   Acacia Research Group is itself a subsidiary of Acacia Research Corporation, another non-practicing entity.  (Ex. A, ¶ 11, Ex. J.)

**C.**  **The Accused Systems' center of gravity is around the District of Minnesota.**

*Target Big Data.*  The Target Big Data system launched in 2012. Target's High-Performance Distributed Computing Team ("HPDC Team") is the team responsible for the development, research, testing, and maintenance of the Target Big Data system.  (Ex. B, ¶ 6.)  In terms of the material information about the Target Big Data system, all roads lead to the HPDC Team.  (*Id.*, ¶ 5.)  This team is █████████████████████████████████ ████████████████████████████  All but three of the team's ████████ team members are based in, or around, Minneapolis, MN.  (*Id.*, ¶ 6.)  The remaining three team members are located in Lakewood, Ohio, Philadelphia, PA, and temporarily near Houston in Fulshear, TX—none of which are in the Eastern District of Texas.[6]  (*Id.*)  In addition, one member of the HPDC Team recently left Target and moved to Sioux Falls, South Dakota, which is 237 miles from Minneapolis, MN.  (*Id.*, ¶ 7; Ex. A, ¶ 15.)

The Target Big Data system and its data are hosted in Target's data centers in ██ ████████████████████████████████████████  (*Id.*, ¶ 8.)  In addition, the documents related to the development, research, testing, and maintenance of the Target Big Data system are housed with ██████████████████  (*Id.*, ¶ 9.)

*Target Search.*  The development of the Target Search system began in 2010.  (Ex. C, ¶ 5.)  The system was ███████████████████████████████████ ███████████████  (*Id.*)  In 2014, Target █████████████████████████ ███████████  (*Id.*)  The team responsible for Target Search's █████████████ ████████████████████████████████  (*Id.*)  Two key Minneapolis-based

---

[6]  The employee presence in Fulshear, Texas—in the Southern District—is a temporary relocation ████████████████████████ and the employee is expected to move back to Minneapolis, Minnesota ████████████████████████ .  (Ex. B, ¶ 6.)

developers of the Target Search system during this time—Raja Ramachandran and Jim Musil—have left Target but remain in the Minneapolis area.  (*Id.*)  In addition, the team responsible for the development, research, testing, and maintenance of Target Search, as it exists today, is also based in Minneapolis.  (*Id.*, ¶ 8.)  This team has five ▮▮▮▮▮ team members, all in Minneapolis.  (*Id.*)

The Target Search system is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮  (*Id.*, ¶ 9.)  The documents related to the development, research, testing, and maintenance of Target Search are housed in Minneapolis.  (*Id.*, ¶ 10.)

Thus, as shown in **Figure A** below, the center of gravity in this case unquestionably lies within the District of Minnesota:



*Figure A*

### III.  LEGAL STANDARD

A district court may, "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  This Court's decision to transfer hinges on a two-step inquiry. ***First***, as a threshold matter, the Court must determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  ***Second***, if that threshold is met, the Court must consider the private and public *Gilbert* factors:

> The private factors are:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen of Am., Inc.*, 545 F.3d, 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  The plaintiff's choice of venue is not a distinct factor in the transfer analysis, *Volkswagen II*, 545 F.3d at 314-15, but "rather contributes to the defendant's burden to show good cause for the transfer," *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 4:13-705, 2014 WL 11515020, at *2 (E.D. Tex. Nov. 7, 2014), *report and recommendation adopted*, No. 4:13-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015).

Timely transfer motions "should [be given] a top priority," *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003), and "are to be decided based on 'the situation which

existed when suit was instituted,'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *see also In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) (a transfer motion "should unquestionably take top priority").

## IV.   ARGUMENT

When all or most of the material evidence and witnesses are located outside of the District, and the transferee forum is at the center of gravity of the accused activities and has a particularized local interest in the litigation, courts in this District routinely order transfer to transferee forum.[7]  That same outcome is required here.

### A.   R2 could have brought this case in the District of Minnesota.

Because Target is headquartered in the District of Minnesota (Ex. A, ¶ 14, Ex. M), and because a patentee may file an infringement action in the "district where the defendant resides," 28 U.S.C. § 1400(b), there can be no dispute that R2 could have brought this case in the District of Minnesota.

---

[7]   *See, e.g.*, *Groupchatter, LLC v. Itron, Inc.*, No. 15-863, 2016 WL 2758480, at *3 (E.D. Tex. May 12, 2016); *Auto. Body Parts Ass'n*, 2015 WL 123852, at *5; *Evolutionary Intel., LLC v. Apple, Inc.*, Nos. 12-783, 12-784, 12-972, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013); *Lone Star Document Mgmt., LLC v. Catalyst Repository Sys., Inc.*, No. 12-164, 2013 WL 5496816, at *4 (E.D. Tex. Mar. 15, 2013); *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 10-224, 2012 WL 194382, at *3 (E.D. Tex. Jan. 23, 2012); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 10-364, 1-365, 1-577, 10-578, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012); *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 10-160, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012); *Balthaser Online, Inc. v. Kimberly-Clark Corp.*, No. 09-188, 2011 WL 1526964, at *3 (E.D. Tex. Apr. 20, 2011); *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 09-356, 2011 WL 1235354, at *4 (E.D. Tex. Mar. 30, 2011); *Ivera Med. Corp. v. Hospira*, No. 10-545, 2011 WL 1882277 (E.D. Tex. Mar. 17, 2011); *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. 09-105, 2009 WL 3784371, at *2 (E.D. Tex. Nov. 10, 2009).

**B.      The District of Minnesota is clearly more convenient.**

  ***i.      The District of Minnesota has absolute subpoena power over non-party witnesses.***

  The subpoena-power factor favors transfer to the District of Minnesota.  "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013).  Importantly, "absolute" subpoena power does not require that "all relevant nonparty witnesses reside within the subpoena power" of the transferee venue, but, instead, that the transferee venue has "the power to subpoena non-party witnesses for both depositions and trials." *Voxpath*, 2012 WL 194370, at *5. For trial subpoena power, a court "may enforce a subpoena issued to any nonparty witness" in the state where that court resides, "provided the party does not incur substantial expense." *See Ingeniador, LLC v. Adobe Sys. Inc.*, No. 12-805, 2014 WL 105106, at *2 (E.D. Tex. Jan. 9, 2014) (citing Fed. R. Civ. P. 45(c)(1)(B)).  A court has deposition subpoena power where "there exists any point that is ***both*** within the district (and thus subject to the Court's subpoena power) ***and*** within 100 miles of the nonparty's location (and thus not subject to a motion to quash))." *Id.*

  Here, not a single known, potential nonparty witness has "been identified as being within the Eastern District of Texas," and there is thus not a single non-party witness over which the Eastern District has absolute subpoena power. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); Figure A, *supra*.  In contrast, the District of Minnesota has absolute subpoena power over at least two known, potential nonparty witnesses: Raja Ramachandran and Jim Musil, both in Minneapolis. (Ex. C, ¶ 5.)  In addition, the District of Minnesota has deposition subpoena power over another nonparty witness: the Sioux Falls witness. (Ex. B, ¶ 7.)  While there are additional nonparty witnesses in California,

"[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses . . . in places outside **both** forums." *Toyota*, 747 F.3d at 1340 (emphasis added).  Where, as is the case here, "there is a substantial number of witnesses within the subpoena power" of the proposed transferee venue, and no non-party witness "who can be compelled to appear in the Eastern District of Texas," the second *Gilbert* factor "weighs in favor of transfer, ***and not only slightly***."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (emphasis added).

   ii.   ***The District of Minnesota is a more convenient location for known witnesses.***

   The cost-of-attendance factor favors transfer to the District of Minnesota.  The further witnesses must travel away from their home, the "more inconvenient and costly for [them] to attend trial."  *Id.* at 1343.  As a result, the Fifth Circuit has developed the "100-mile" rule, which requires that "[w]hen the distance between an existing venue . . . and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen II*, 545 F.3d at 317.  This assessment of cost and convenience applies to both party and nonparty witnesses, but "it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-474, 2019 WL 3082314, at *19 (E.D. Tex. July 15, 2019).  The "100-mile rule," however, "should not be rigidly applied" where witnesses "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1344; *see also Apple*, 979 F.3d at 1341 ("*Genentech*'s interpretation of the 100-mile rule is consistent with the Fifth Circuit's reasoning underlying the rule . . . .").

Here, the District of Minnesota is a more convenient location for Target employees and multiple non-party witnesses with unique knowledge of the Accused Systems.  Many of Target's employees with relevant knowledge and two non-party witnesses live in the District of Minnesota (the "Minnesota Witnesses").  (Ex. B, ¶ 6; Ex. C, ¶¶ 5, 8, and 10; Figure A, *supra*.)  The Minnesota Witnesses would be within a short drive of the Minneapolis courthouse.  In contrast, any Minnesota Witness would have to travel over 800 miles to reach Sherman, Texas.  Given the distance, "overnight stays" would be guaranteed, "increas[ing] the probability for meal and lodging expenses" and "increas[ing] the time" which the witnesses "must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317.  Absent transfer, the Minnesota Witnesses will "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *See id*.

The District of Minnesota is also a more convenient location for most of the relevant Target employees who reside outside of the District of Minnesota, as shown below.  (*See* Ex. A, ¶ 15.)

| Starting Location | Miles to Minneapolis, MN | Miles to Sherman, TX |
|---|---|---|
| Sioux Falls, SD | 237 | 802 |
| Lakewood, OH | 745 | 1,117 |
| Reading, PA | 1,124 | 1,420 |

One exception is the Target employee who has temporarily relocated to Fulshear, Texas, which is 304 miles away from Sherman, Texas and outside of the Eastern District.  (*Id*.) However, the Target employee is expected to move back to Minneapolis, Minnesota ███ ████████████████████████ (Ex. B, ¶ 6.)  Given that this Court only recently

-10-

scheduled a Rule 16 Management Conference for June 25, 2021, any purported convenience for the Target employee for trial is speculative at best.

Regardless of venue, the potential witnesses from California will have to travel over 1400 miles for trial.  (Ex. A, ¶ 15.)  Consequently, any "added inconvenience that would be suffered by these witnesses in traveling to [Minnesota] rather than Texas is not great, since these witnesses would already be committed to long flights." *Ingeniador*, 2014 WL 105106, at *3.  In addition, given that the majority of witnesses will likely come from Minnesota, any inconvenience is "outweighed by the substantially increased convenience of the witnesses in [Minnesota]." *Id*.

Most notably, not one known witness resides in the Eastern District of Texas.  Thus, if this case is not transferred, every single witness "would have to travel significant distances for trial." *Evolutionary Intel.*, 2013 WL 8360309, at *7.  In contrast, "numerous party witnesses" and non-party witnesses would "avoid material inconvenience" if this case was transferred. *Voxpath*, 2012 WL 194370, at *5.  Thus, this factor strongly favors transfer.

### iii. The relevant evidence is in the District of Minnesota and no relevant evidence is in the Eastern District of Texas.

The non-witness-evidence factor also favors transfer to the District of Minnesota.  These factors favor transfer to a forum where "non-witness evidence, such as documents and other physical evidence," are located. *Apple*, 979 F.3d at 1339.  This *Gilbert* factor, along with the cost-and-convenience-for-witnesses factor (Section IV.B.ii, *supra*), is one of "the most important factor[s]." *See Parity Networks, LLC v. Juniper Networks, Inc.*, 2018 WL 10124889, at *2 (E.D. Tex. Sept. 17, 2018).  Even though technology permits the digital transfer of documents, courts still look to where that documentary evidence is

stored.  *Volkswagen II*, 545 F.3d at 316.  In the Fifth Circuit, "this factor remains relevant despite technological advances having made electronic document production commonplace." *Net Navigation Sys., LLC v. Extreme Networks, Inc.*, No. 4:14-254, 2014 WL 5465449, at *3 (E.D. Tex. Oct. 27, 2014).  Finally, because in patent infringement cases the "bulk of the relevant evidence usually comes from the accused infringer," the location of the defendant's documents "weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345; *see also Net Navigation*, 2014 WL 5465449, at *7 ("It is presumed that the bulk of the discovery material related to a corporate party is located in that party's corporate headquarters.").

Here, Target's documents are maintained in ███████████ (Ex. B, ¶ 9; Ex. C, ¶ 10.)  Indeed, all of Target's relevant evidence is in the District of Minnesota, where the employees who designed, developed, and tested the Accused Systems work and where technical documents are maintained.  (*Id.*, ¶ 6; Ex. C, ¶ 8.)  Moreover, the Target Big Data system's physical data center, which hosts the platform and its data, is located in ████████ ███████████ (*Id.*, ¶ 8.)  Thus, the "bulk of the relevant evidence" is in the District of Minnesota.  *Genentech*, 566 F.3d at 1345.

By contrast, there are no documents located uniquely in Texas. There are no relevant Target documents located uniquely in Texas. (Ex. B, ¶ 10; Ex. C, ¶ 11.)  There is also no indication that R2, an LLC conducting no discernable commercial activity from its recently designated parent corporation's Eastern District address, has any relevant documents in the District.  Under similar circumstances, courts in this District have found that, where substantial, relevant evidence resides within the proposed transferee venue, and ***none*** resides within the Eastern District of Texas, the access-to-sources-of-proof factor weighs

-12-

in favor of transfer.  *See Balthaser Online*, 2011 WL 1526964, at *3 ("Because there are no sources of proof in the Eastern District of Texas, and there are sources of proof in the Eastern District of Wisconsin, the Court finds that this factor weighs in favor of transfer to the Eastern District of Wisconsin."); *Wireless Recognition Techs.*, 2012 WL 506669, at *4 ("[M]ultiple defendants are headquartered in the Northern District of California, a large number of witnesses and other sources of proof are located there, and there are no identified witnesses or evidence located in the Eastern District of Texas."); *Ingeniador,* 2014 WL 105106, at *2 ("[T]he bulk of the relevant evidence likely resides in the Northern District of California."); *Auto. Body Parts Ass'n*, 2015 WL 123852, at *5 ("There are no sources of proof in the Eastern District of Texas. . . . [T]he bulk of the relevant evidence regarding the creation of the design and the patents is in Michigan."). Thus, this factor strongly favors transfer.

### iv.    *R2's co-pending cases in the Eastern District of Texas do not weigh against transferring this case to the District of Minnesota.*

The private *Gilbert* factor four considers other practical problems that make trial of a case easy, expeditious, and inexpensive.  *See Volkswagen II*, 545 F.3d at 315.  For this factor, courts consider the "existence of multiple lawsuits involving the same issues."  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*"). Motions to transfer venue, however, are "to be decided based on 'the situation which existed when suit was instituted'" and, thus, "[a]ny subsequent familiarity gained by the district court is . . . irrelevant."  *In re EMC Corp.*, 501 F. App'x at 976 (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)); *see also Adaptix, Inc. v. Apple Inc.*, 2013 WL 12137842, at *7 (E.D. Tex. Mar. 28, 2013).  Here, at the time R2 initiated its suit against Target, R2 had just filed four other patent-infringement suits in this district.  *See R2*

-13-

*Solutions LLC v. Samsung Elecs. Am., Inc.*, Case No. 4:21-cv-00089 (filed Jan. 29, 2021); *R2 Solutions LLC v. Deezer SA*, Case No. 4:21-cv-00090 (filed Jan. 29, 2021); *R2 Solutions LLC v. Walmart Inc.*, Case No. 4:21-cv-00091 (filed Jan. 29, 2021); *R2 Solutions LLC v. Workday, Inc.*, Case No. 4:21-cv-00093 (filed Jan. 29, 2021).  Thus, at the time R2 initiated its suit against Target, this Court did not have any specific experience in the R2 cases. Moreover, the R2 cases involve substantively different accused systems and only one of the cases, the *Walmart* case, involves the same three patents.  (*See* n.4 above.)  Therefore, at most, this factor is neutral.  *See Adaptix*, 2013 WL 12137842, at *7.

### v.    *Only the District of Minnesota has a particularized interest.*

Finally, the localized-interest factor weighs in favor of transfer.  Here, there is no particularized local interest that would be served by having this matter adjudicated in the Eastern District of Texas.  Instead, the forum that has a localized interest in this case is the District of Minnesota.  Target has been headquartered in Minneapolis, Minnesota since 1962, which creates a significant interest in transferring to the local forum. And, where, as is the case here, the relevant research and design decisions occurred in the transferee district, that "giv[es] that district the greatest local interest in deciding this dispute." *See Auto. Body Parts Ass'n*, 2014 WL 11515020, at *4.  Moreover, although Target denies them, R2's allegations of patent infringement "call[] into question the work and reputation" of Target and its employees, and thus there is a strong local interest in the outcome of the case.  *In re Hoffman-La Roche Inc.*, 587 F.3d, 1333, 1336 (Fed. Cir. 2009).

The Eastern District of Texas has little local interest—let alone a ***particularized*** interest—in deciding this case.  Here, the people of the Eastern District of Texas have no relation to this litigation.  As described above, R2's connections to the Eastern District are tangential at best, relying on a parent company's address as its own. (Section II.A, *supra.*)

-14-

R2 does not conduct any discernable commercial activity or have known, identifiable employees within this District. (*Id.*)  Given that it has "no relation to the litigation," jury duty "is a burden that ought not to be imposed upon" the community in this District. *Volkswagen I*, 371 F.3d at 206; *see also Affinity Labs of Texas v. Samsung Elecs. Co.,* 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013).  To underscore the point, R2 could not even be bothered to fill out the required paperwork to transact business in Texas. (Section II.A, *supra.*)  This type of entity—with a technical, ephemeral connection to this community, but no interest in conducting real business here—is not the type of entity that generates a particularized local interest.

Even if the Accused Systems were accessible from anywhere in the country, their use nationwide "does not give rise to a substantial interest in any single venue." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).  Indeed, where the acts of alleged infringement in one forum "could apply virtually to any judicial district or division in the United States," such acts cannot be the basis for a significant local interest. *See Volkswagen II*, 545 F.3d at 318.  Thus, "because the accused [systems] were designed, developed, and tested" in the District of Minnesota, and "because the lawsuit 'calls into question the work and reputation of several individuals residing'" in the District of Minnesota, "this factor weighs in favor of transfer."  *Apple*, 979 F.3d at 1345.

## V.    CONCLUSION

For the reasons discussed above, Target respectfully requests that this Court transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

Dated: May 6, 2021

Respectfully submitted,

 _/s/ Doowon Chung_
Lauren Steinhaeuser (admitted to EDTX)
Minnesota Bar No. 0392477
Lauren.Steinhaeuser@faegredrinker.com
Doowon Chung (admitted to EDTX)
Minnesota Bar No. 0397413
Doowon.Chung@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Ctr. 90 S. Seventh St.
Minneapolis, Minnesota 55402
Tel: (612) 766-6879
Fax: (612)766-1600

Roger D. Sanders
TX State Bar No. 17604700
rsanders@somlaw.net
J. Michael Young
TX State Bar No. 00786465
myoung@somlaw.net
**SANDERS, MOTLEY, YOUNG & GALLARDO**
111 South Travis Street
Sherman, Texas 75090
(903) 892-9133
(903) 892-4302 (fax)

***Counsel for Defendant, Target Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2021, I caused a copy of the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system.  Therefore, this document was served on the attorneys of record, all of whom are deemed to have consented to electronic service, by operation of the Court's CM/ECF system.

 */s/ Doowon Chung*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the conference required by Local Rule CV-7(h) occurred by telephone on May 5, 2021, between counsel for Plaintiff, Hill Brakefield, and counsel for Defendant, Lauren Steinhaeuser, Doowon Chung, and Michael Young. Plaintiff's counsel stated that Plaintiff opposes Target's motion.  Despite discussing in good faith the relief requested by Target, no agreement could be reached and discussions ended in an impasse, leaving an open issue for the court to decide.

 */s/ Doowon Chung*

## CERTIFICATE OF MOTION TO SEAL

The undersigned hereby certifies, pursuant to Local Rule CV-5, that a Motion to Seal Target's Motion to Transfer, the Declaration of Patrick St. Dennis, and the Declaration of Minesh Patel has been filed.

 */s/ Doowon Chung*