**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **R2 SOLUTIONS LLC,** | |
| *Plaintiff*, | |
| | **Civil Action No. 4:21-cv-00092** |
| **v.** | |
| **TARGET CORPORATION,** | ██████████ |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................1

     A.    Public Interest Factors..................................................................................1

           i.     The Administrative Difficulties Flowing From Court Congestion in the District of Minnesota Weigh Against Transfer....................................2

           ii.    Both Districts Have an Interest in Deciding the Issues of This Case at Home...........................................................................................................3

     B.    Private Interest Factors .................................................................................6

           i.     The Relative Ease of Access to Sources of Proof Does Not Favor Transfer ......................................................................................................6

           ii.    Target Has Not Shown That Compulsory Process Is Available For More Unwilling Witnesses in the District of Minnesota Than in This Court ...........................................................................................................10

           iii.   The Cost of Attendance for Willing Witnesses Only Slightly Favors Transfer ......................................................................................................12

           iv.   Practical Problems That Make a Trial Easy, Expeditious, and Inexpensive Weigh Heavily Against Transfer ...........................................13

III.  CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s):**

*Adaptix, Inc. v. Cellco P'ship*,
2015 U.S. Dist. LEXIS 186704 (E.D. Tex. Aug. 12, 2015)....................................................... 11

*Agis Software Dev. LLC v. Huawei Device USA Inc.*,
2018 U.S. Dist. LEXIS 86382 (E.D. Tex. May 23, 2018) ...................................................... 13

*Automotive Body Parts Association v. Ford Global Technologies*,
2015 U.S. Dist. LEXIS 1987 (E.D. Tex. Jan. 7, 2015) ............................................................ 9

*Centre One v. Vonage Holdings, Corp.*,
2009 U.S. Dist. LEXIS 69683 (E.D. Tex. Aug. 10, 2009)...................................................... 15

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*,
2016 U.S. Dist. LEXIS 100825 (E.D. Tex. Aug. 2, 2016)........................................................ 4

*Cypress Lake Software, Inc. v. HP Inc.*,
2018 U.S. Dist. LEXIS 231553 (E.D. Tex. June 27, 2018) .................................................... 11

*Dong Sik Yoo v. Kook Bin Im*,
2018 U.S. Dist. LEXIS 11246 (E.D. Tex. Jan. 24, 2018) ........................................................ 7

*Garnish & Gather, LLC v. Target Corp.*,
2019 U.S. Dist. LEXIS 213960 (S.D.N.Y. Dec. 9, 2019)...................................................... 15

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
2017 U.S. Dist. LEXIS 26755 (E.D. Tex. Feb. 27, 2017)...................................................... 13

*iFly Holdings LLC v. Indoor Skydiving Germany GMBH*,
2015 U.S. Dist. LEXIS 136537 (E.D. Tex. Oct. 7, 2015)........................................................ 4

*In re Apple, Inc.*,
581 Fed. Appx. 886 (Fed. Cir. 2014) ................................................................................... 10

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................. 2

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010) ........................................................................................... 13

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)................................................................................................. 6

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ........................................................................ 13, 14

*Knapper v. Safety Kleen Sys.*,
    2009 U.S. Dist. LEXIS 30118 (E.D. Tex. Apr. 3, 2009) ........................................ 8

*KT Imaging USA, LLC v. HP Inc.*,
    2021 U.S. Dist. LEXIS 35071 (E.D. Tex. Feb. 25, 2021)........................ 3, 7, 10, 11

*Net Navigation Sys. v. Alcatel-Lucent U.S.*,
    2012 U.S. Dist. LEXIS 204069 (E.D. Tex. Aug. 24, 2012).................................. 14

*Oxysure Sys. v. Castaldo*,
    2016 U.S. Dist. LEXIS 32905 (E.D. Tex. Mar. 15, 2016) ...................................... 3

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ............................................................................................... 1

*Scrum All., Inc. v. Scrum, Inc.*,
    2021 U.S. Dist. LEXIS 87342 (E.D. Tex. May 7, 2021) ....................................... 2

*Shawn Massey Farm Equip., Inc. v. Claas of Am., Inc.*,
    2012 U.S. Dist. LEXIS 185594l (E.D. Tex. Dec. 19, 2012) .................................. 6

*Uniloc U.S. v. Huawei Device U.S.*,
    2018 U.S. Dist. LEXIS 234545 (E.D. Tex. Sept. 6, 2018)................................ 10, 12

*VCode Holdings, Inc. v. Cognex Corp.*,
    2007 U.S. Dist. LEXIS 56672 (E.D. Tex. Aug. 3, 2007)........................................ 1

*Vomastek v. AXA Equitable Life Ins. Co.*,
    2016 U.S. Dist. LEXIS 95583 (E.D. Tex. Feb. 16, 2016)..................................... 13

*Wireless Recognition Technologies, LLC v. A9.com, Inc*,
    2012 U.S. Dist. LEXIS 19210 (E.D. Tex. Feb. 14, 2012) ...................................... 9

## Rules, Statutes and Regulations:

Fed. R. Civ. P. 45(c)(1).................................................................................................... 12

Fed. R. Civ. P. 45(c)(1)(B) ............................................................................................. 10

## I.    INTRODUCTION

R2 Solutions, LLC, a Texas corporation with ties to this District, filed suit against eight companies in this Court. *See* Case Nos. 4-21-cv-00174; 4-21-cv-00122; 4-21-cv-00123; 4-21-cv-00089; 4-21-cv-00090; 4-21-cv-00091; 4-21-cv-00092; 4-21-cv-00093. The patents asserted against Target overlap with at least one patent in six of the seven related cases. One case shares identical patents and addresses common issues of infringement. *See R2 Solutions LLC v. Walmart Inc.*, No. 4-21-cv-00091. The only case that does not contain any common issues is *R2 Solutions LLC v. Samsung Electronics America, Inc.*, No. 4-21-cv-00089, and that case is stayed while the parties complete their settlement papers. No. 4-21-cv-00089, Dkt. No. 22. Target now asks this Court to transfer its case to the District of Minnesota, creating two parallel litigations that must resolve overlapping issues presented by the patents-in-suit. While a transfer to Minnesota would be convenient for Target because that is where it keeps its headquarters, Target has not shown that the public and private interest factors clearly favor transfer.

## II.    ARGUMENT

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Courts in this District typically treat two of the public interest factors as neutral in patents cases: (1) familiarity of the forum with the law that will govern the case; and (2) the avoidance of unnecessary problems of conflicts of law. *See, e.g., VCode Holdings, Inc. v. Cognex Corp.*, 2007 U.S. Dist. LEXIS 56672, at *10–11 (E.D. Tex. Aug. 3, 2007). Target has not shown that the two remaining public interest factors and the four private interest factors clearly weigh in favor of transfer.

### A.  Public Interest Factors

This Court treats two of the four public interest factors as neutral in most patent litigation matters. Of the two remaining factors, one weighs strongly against transfer—the administrative difficulties flowing from court congestion. The other—the local interest in having local issues decided at home—is, at least, neutral.

### i. The Administrative Difficulties Flowing From Court Congestion in the District of Minnesota Weigh Against Transfer.

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Target's motion did not address this factor, so it cannot favor transfer. *See Scrum All., Inc. v. Scrum, Inc.*, 2021 U.S. Dist. LEXIS 87342, at *14 n.3 (E.D. Tex. May 7, 2021) ("[T]he Court assumes that the factors [the defendant] does not substantively address are either 'neutral or do not favor transfer.'"). Moreover, evidence of the backlog of cases in Minnesota and this Court's ability to better handle an ongoing pandemic weigh strongly against transfer.

Transferring this case to the District of Minnesota will cause significant delay. As shown below, the median time to trial in the District of Minnesota for patent cases is twice that of the Eastern District of Texas (5.12 years in the District of Minnesota versus 2.40 years in the Eastern District of Texas)[1]:



---

[1] Court & Judge Comparison Report: EDTX vs. EMN, Docket Navigator, https://search.docketnavigator.com/patent/court_comparison/0/11 (last visited May 18, 2021).

The Federal Court Management Statistics suggest that the time to trial in Minnesota may be even longer because the District of Minnesota has not reported median time to trial in civil cases for each of the last three quarters. *See* Ex. 1 at 58, Ex. 2 at 58, Ex. 3 at 58.

The threat of delays is particularly acute in the District of Minnesota due to Covid-19. The current Covid-19 case count is 6x higher in Hennepin County, MN (18 cases per 100,000) than in Grayson County, TX (3.1 cases per 100,000). *See Tracking Coronavirus in Grayson County, Texas*, THE NEW YORK TIMES, https://www.nytimes.com/interactive/2021/us/grayson-texas-covid-cases.html (last accessed May 17, 2021); *Tracking Coronavirus in Hennepin County, Minn.*, THE NEW YORK TIMES, https://www.nytimes.com/interactive/2021/us/hennepin-minnesota-covid-cases.html (last accessed May 17, 2021). The District of Minnesota briefly held trials between September and November 2020, *see* Exs. 4–5, and it has stated that it would not resume in-person civil jury trials until after May 3, 2021. *See* Ex. 6. When it does begin jury trials, it will presumably have a large backlog of cases to process. In contrast, this Court resumed jury trials last year and has continued to push cases toward trial in an efficient manner. *See KT Imaging USA, LLC v. HP Inc.*, 2021 U.S. Dist. LEXIS 35071, at *15–16 (E.D. Tex. Feb. 25, 2021) (finding that the fact that the Eastern District of Texas has held over twenty jury trials during the pandemic weighed against transfer). Given the significant delays that a transfer to the District of Minnesota would create and this Court's demonstrated ability to remain open in the face of a pandemic, this factor weighs heavily against transfer.

### ii. Both Districts Have an Interest in Deciding the Issues of This Case at Home.

R2 Solutions' presence in this District gives this Court an interest in deciding this case, and Target's headquarters in Minneapolis give the District of Minnesota an interest in deciding this case. *See Oxysure Sys. v. Castaldo*, 2016 U.S. Dist. LEXIS 32905, at *14 (E.D. Tex. Mar.

15, 2016) (finding this factor neutral even though Defendants' principal place of business and residence was in the Eastern District of New York because plaintiff's principal place of business was in the Eastern District of Texas). This Court's interest in adjudicating claims involving Texas-owned patents, particularly where infringement of those patents has a negative effect on District residents, counterbalances any interest the District of Minnesota has in deciding a case that calls into question the reputation of Target and its employees

This court has an interest in this case because a Texas company owns the asserted patents. *See Cooktek Induction Sys., LLC v. I/O Controls Corp.*, 2016 U.S. Dist. LEXIS 100825, at *9 (E.D. Tex. Aug. 2, 2016) ("Because Plaintiff is located in Texas, and the owner of the patent at issue, this case does have a significant connection to this district."); *iFly Holdings LLC v. Indoor Skydiving Germany GMBH*, 2015 U.S. Dist. LEXIS 136537, at *13 (E.D. Tex. Oct. 7, 2015) ("Texas residents have a strong interest in deciding a patent infringement dispute involving a patent owned by a Texas company."). R2 Solutions is a Texas LLC that has a place of business in this District. Complaint at ¶1. The residents of this District have a keen interest in hearing claims that Target infringed upon their neighbor's property rights in this District.

Specifically, District residents have a strong interest in deciding this case because Target's infringement of the asserted patents has a negative economic impact in this District. Small business in this District struggle to compete with e-commerce platforms such as Target's. *See, e.g.*, *Online Shopping Poses Competition for East Texas Small Business*, KLTV, https://www.kltv.com/story/33794639/online-shopping-poses-competition-for-east-texas-small-businesses/ ("But for some East Texas small business owners, online shopping has a big impact on profits they make."); *see also Harms of Big Box Retail*, GOOD JOBS FIRST, https://www.goodjobsfirst.org/smart-growth-working-families/harms-big-box-retail (defining Target as

a "big-box" retailer, and explaining how "big-box retailers have been the death knell for local businesses"). Target recognizes that its search engine is a key driver of its e-commerce platform. For example, in a presentation in 2014, Target explained that its search engine "handles 65% of traffic and drives nearly a billion dollars in revenue." Ex. 7 at 6. That dollar amount has likely ballooned over recent years as Target's e-commerce capabilities expanded. Indeed, "Target's online sales soared by 24 percent during the quarter ending Aug. 1, compared to the same time last year." Leticia Miranda, *A tale of two pandemics: Big-Box Stores Rake in Record Profits While Small Businesses Fold*, NBC NEWS, https://www.nbcnews.com/business/ consumer/tale-two-pandemics-big-box-stores-rake-record-profits-while-n1237464 (last visited May 17, 2021). Meanwhile, small businesses, including many in this District, experienced double-digit percentage declines in sales from May to July 2020. *Id.* The owners and employees of these small businesses located in the Eastern District of Texas thus have a keen interest in determining whether the competitive advantage that Target enjoys from its search engine are actually an unauthorized use of patents owned by a fellow Texan.

Contrary to Target's assertions, R2 Solutions has more than an "ephemeral connection to this community," and certainly has interest "in conducting real business here." Dkt. No. 21 at 15. Target is not clear on what it means by "real business," but R2 Solutions' significant licensing activities constitute "business" as any reasonable person would comprehend the term. R2 Solutions may not boast the same name recognition, number of employees, or nation-wide presence as Target, but these things do not define what makes something a "real business." Both R2 Solutions and the Texas business that owned the patents-in-suit before R2 Solutions have negotiated multiple licenses for the patents outside of litigation. *See* Ex. 10 at ¶ 8–10. Furthermore, R2 Solutions is not ephemeral. It was formed in Texas in 2016, *see* Ex. 8, and it

has maintained places of business in Austin, Texas or in this District the entire time. *See* Ex. 9 at 1; Ex. 10 at ¶¶ 4, 6. It plans to continue enforcing the patents it owns (including via active non-litigation licensing efforts), Ex. 10 at ¶¶ 8–11, many of which do not expire until the 2030s. Contrary to Target's mischaracterization, this company is not merely a fleeting concern.

That this action calls into question the work and reputation of Target and its employees does not tip the scales in favor of transfer. *See Shawn Massey Farm Equip., Inc. v. Claas of Am., Inc.*, 2012 U.S. Dist. LEXIS 185594l, at *17 (E.D. Tex. Dec. 19, 2012) (finding this factor neutral because the Eastern District of Texas has an interest in protecting the rights of its citizens just as the proposed transfer District would have an interest in adjudicating suits calling into question the reputation of its residents). Although Target has extensive ties to the District of Minnesota, the Eastern District of Texas has an equal, if not greater, interest in hearing this case because a Texas company owns the patents, and Target's infringements of those patents negatively impacts small businesses in this District.

### B.    Private Interest Factors

The private interest factors do not counterbalance the public interest factors, which weigh against transfer. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Here, the first and second factors are, at least, neutral. While the third factor slightly favors transfer, the fourth factor weighs heavily against transfer.

#### i.    The Relative Ease of Access to Sources of Proof Does Not Favor Transfer.

Target has not shown that relevant evidence is meaningfully more accessible in Minnesota than in this District. Most of its evidence is stored on servers and can be accessed globally. Even if Target has physical evidence that is relevant to this case, it has not shown that it would be burdensome to transport such evidence to this District. Finally, evidence in this case is scattered around this country. Taken together, these factors suggest that transfer of this case will not improve access to relevant proof

Target stores the relevant proof in █████████████. Accordingly, it is easily accessible in this District. "Storing documents in a cloud setting reduces the burden of transporting documents to a selected venue." *KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at *6. Target states that its "Big Data system and its data, including the source code, are hosted in Target's data centers in ███████████████████████ Ex. B at ¶ 8. Indeed, this evidence must be easily accessible outside of Minnesota if ████████████████████████████ ████████████████ *See id.* at ¶ 6. Likewise, the evidence relevant to Target Search is all stored in ████████. *See* Ex. C at ¶ 9 ("The Target Search system and its data are hosted on ██████ ██████████████████████████████ Ex. C at ¶ 10 ("The documents related to the development, research, testing, and maintenance of the Target search system are ██████████ ████████████████████████████████████.

While "documents related to the development, research, testing, and maintenance of the Target Big Data system are housed with ████████████████████████" Target does not explain whether this evidence is physical evidence or electronic evidence, preventing this Court from properly evaluating the burden of transporting it to this District. Even if these are physical documents, Target has not established that these documents are so voluminous as to present a burden to transport them to the Eastern District of Texas. *See Dong Sik Yoo v. Kook Bin Im*, 2018

7

U.S. Dist. LEXIS 11246, 2018 WL 549957, at *7 (E.D. Tex. Jan. 24, 2018) ("[T]he location of documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'") (citations omitted).

The relevant proof is also scattered around the country, not clustered in Minnesota. *See Knapper v. Safety Kleen Sys.*, 2009 U.S. Dist. LEXIS 30118, at *28 (E.D. Tex. Apr. 3, 2009) (finding that evidence was not particularly accessible from Lufkin, the current venue, or Florida, a proposed transfer venue, because some work records were in Texas and New York, defendant's corporate records were in Texas, Pennsylvania, North Carolina, Indiana, and Ohio, and medical records were located in Washington and Florida). The inventors of the asserted patents reside in Northern California, Washington, Southern California, and India. *See* Exs. 11–17. Many of the relevant witnesses reside in ▇▇▇ *See* Ex. C at ¶ 5 ("The team responsible for the Target Search system's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) (emphasis added); Ex. B at ¶ 6 ("[I]n terms of material information about the Target Big Data system, all roads lead to the HPDC team," which includes ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇) (emphasis added). The Target Employees that R2 Solutions cited in its exemplary claim charts submitted with its Complaint also reside outside of Minnesota. Matthew Sharp, cited in Exhibit 4 to the Complaint, resides in Reading, Pennsylvania. Ex. B at 6. Sunil Srinivasan, Aashish Dattani, and Richard Wang, whose work is cited in Exhibits 5 and 6 to the Complaint, reside in the San Francisco area. *See* Exs. 18–20. Ilayaraja Prabakaran, also cited in Exhibits 5 and 6 to the Complaint, resides in India. *See* Ex. 21.[2]

---

[2] Srinivasan, Dattani, Wang, and Prabakaran were all conveniently ignored in Target's Motion to Transfer Venue even though R2 Solutions' complaint put Target on notice that these individuals would be highly relevant to infringement.

Target's situation is distinguishable from much of the case law it cites. First, *Automotive Body Parts Association v. Ford Global Technologies* discussed physical evidence rather than the largely-electronic evidence at issue here. 2015 U.S. Dist. LEXIS 1987, at *13–15 (E.D. Tex. Jan. 7, 2015) (finding this factor to favor transfer because Ford provided evidence that all of the "**non-electronic evidence of models and physical products** are material evidence in Ford's defense of the ABPA's assertion of functionality," and all such evidence was located in the transferee district) (emphasis added). Target has not shown that any physical evidence is relevant to this case, let alone that so much of it is in Minnesota that it would be burdensome to transport it to this Court. Second, Target's case is distinguishable from *Wireless Recognition Technologies, LLC v. A9.com, Inc.* because Target seeks transfer of its case alone. 2012 U.S. Dist. LEXIS 19210, at *14–15, 21 (E.D. Tex. Feb. 14, 2012). *Wireless Recognition* involved a motion to transfer multiple defendants to a single district. *See id.* at *14 ("It is undisputed that multiple defendants are headquartered in the Northern District of California"). Thus, the "large number of witnesses and other sources of proof" that were located in California related to all of the defendants. Here, Target proposes sending it to a venue where it will face its claims of infringement alone while this court must litigate for the remaining defendants overlapping, and in Walmart's case identical, issues.

The evidence Target proffered regarding proof located in the District of Minnesota relates to electronic documents that are easily accessible in either District. The Target employees with the most relevant information on infringement and other issues to be addressed at trial reside across the country and the globe. Neither district is clearly more convenient for these individuals given the long distances they would travel to get to either Minnesota or Texas. Because relevant

witnesses are scattered across various locations "and substantial evidence can be easily accessed in either [district], . . .  this factor is neutral." *KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at *9.

### ii. Target Has Not Shown That Compulsory Process Is Available For More Unwilling Witnesses in the District of Minnesota Than in This Court.

The party seeking transfer bears the burden to identify unwilling witnesses who would benefit from transfer. *Uniloc U.S. v. Huawei Device U.S.*, 2018 U.S. Dist. LEXIS 234545, at *8 (E.D. Tex. Sept. 6, 2018); *see also In re Apple, Inc.*, 581 Fed. Appx. 886, 891 (Fed. Cir. 2014) ("[I]t is the burden of the party seeking transfer to show (1) that the witnesses would be unwilling to travel to the transferor district and (2) that the witnesses' testimony would be important to the issues at trial." (Bryson, J., dissenting)). Target identified two former employees for which compulsory process is available in the District of Minnesota. However, Target did not establish that these are unwilling witnesses it plans to offer at trial or in a deposition.

In contrast, this Court has compulsory process over at least one unwilling witness who R2 solutions intends to call to trial. Federal courts may compel a witness's attendance at trial, hearing, or deposition by subpoena if the court is located in the same state where the witness "resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). Paul Reidy resides in Texas and possesses evidence relevant to R2 Solutions' damages case. *See* Ex. 10 at ¶¶ 3–5, 8; Ex. 22. Mr. Reidy is President of Excalibur IP, LLC ("Excalibur"). Ex. 22. The patents-in-suit were previously owned by Excalibur, and Mr. Reidy previously owned R2 Solutions. Ex. 9; Ex. 10 at ¶¶ 3–7. Mr. Reidy negotiated licensing agreements involving the patents-in-suit while they were owned by Excalibur. *See* Ex. 10 at ¶¶ 5, 8. This information is highly relevant to evaluating the damages that R2 Solutions is owed by virtue of Target's infringing activities.

Traveling from Austin to Sherman will not cause Mr. Reidy to incur substantial expense in comparison to traveling to Minnesota. *See KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at * 10–11 ("While Spring is at least four hours away by car from Sherman, it is easier for Spring employees to drive a few hours than to fly to another state."). If this Court determines that the distance between Austin and Sherman is so great that it would inflict substantial expense on Mr. Reidy, R2 Solutions will pay Mr. Reidy's travel expenses. *See id.* at * 10–11 (E.D. Tex. Feb. 25, 2021) ("As KTI pledges to pay expenses for those non-East Texas HP witnesses, they would not incur a substantial expense."). Thus, compulsory process is available for at least one of R2 Solutions' unwilling, third-party witnesses.

Target has not shown that the District of Minnesota has compulsory process over material, unwilling witnesses. While Target identified former employees that are within the District of Minnesota's subpoena power, Target "has not indicated whether it reasonably expects to call any of these witnesses at trial or depose them, whether they would be unwilling witnesses, or the nature of the testimony these witnesses would give." *Cypress Lake Software, Inc. v. HP Inc.*, 2018 U.S. Dist. LEXIS 231553, at *10 (E.D. Tex. June 27, 2018). To properly weigh this factor, "litigants should not only specifically identify potential unwilling witnesses, but also should identify the relevancy and materiality of the information such witnesses would provide and therefore the foreseeability that a particular witness would be deposed, called to trial, or both." *Adaptix, Inc. v. Cellco P'ship*, 2015 U.S. Dist. LEXIS 186704, at *11 (E.D. Tex. Aug. 12, 2015).

Target's Motion to Transfer merely describes the former employees as "potential nonparty witnesses." Mot. at 8. No mention is made of what information these "potential" witnesses may have, or whether Target even plans on calling these individuals to trial or a

11

deposition. Exhibit C to Target's Motion merely states that Ramachandran and Musil were "involved in the Target Search system's ███████████ and "involved in implementing the Target Search System's ███████████ respectively. The phrase "involved in" does not tell this Court anything about what relevant information these individuals possess. Did they make coffee for the programmers? Did they install new servers? Did they actually make design decisions or type relevant portions of code? Target does not explain. Target did not even state whether they plan on deposing these former employees or bringing them to trial. Because it is unclear what information the former employees may have or whether they will play any role in this case, the former employees do not shift the balance in favor of transfer.

The identification of a potential witness in Sioux Falls also does not alter the balance. "The Fifth Circuit values **absolute** subpoena power when deciding motions to transfer." *Uniloc*, 2018 U.S. Dist. LEXIS 234545, at *8 (emphasis added). The District of Minnesota cannot compel the witness in Sioux Falls to appear at trial because Sioux Falls is more than 100 miles from any court in the District of Minnesota and because it is not in the state of Minnesota. *See* Fed. R. Civ. P. 45(c)(1). Thus, the District of Minnesota does not have **absolute** subpoena power over that witness. Because this Court can secure compulsory process over at least one witness while Target has failed to establish that compulsory process is available over any material, unwilling witnesses in the District of Minnesota, this factor weighs against transfer.

### iii. The Cost of Attendance for Willing Witnesses Only Slightly Favors Transfer.

Target has not identified any willing, non-party witnesses for whom the District of Minnesota will be more convenient than the Eastern District of Texas. Although two former Target employees live in Minnesota, Target has not offered any evidence that these individuals are willing to appear at trial. This Court thus assumes that they are unwilling witnesses. *See*

*Vomastek v. AXA Equitable Life Ins. Co.*, 2016 U.S. Dist. LEXIS 95583, at *15 n.2 (E.D. Tex.

Feb. 16, 2016) ("For the purposes of this analysis, and without a clear representation of

willingness to attend, the Court must assume that Mr. Bass is an unwilling witness, as he is not a

party in this case."). Furthermore, Target cannot rely on these former employees under this factor

because it relied on them for its argument regarding the District of Minnesota's subpoena power.

*See Agis Software Dev. LLC v. Huawei Device USA Inc.*, 2018 U.S. Dist. LEXIS 86382, at *11–

12 (E.D. Tex. May 23, 2018) (explaining that access to a witness for presentation at trial may be

considered under either the court's subpoena power or the cost of attendance for willing

witnesses, but not both factors; "[t]hese factors do not permit a single source of proof or witness

to be "double counted" or unduly influence the analysis").

Although Target has identified several employees in Minnesota that work on the accused

products, their presence only slightly favors transfer because they are party witnesses. The

convenience to non-party witnesses is afforded greater weight when analyzing this factor. *See*

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 U.S. Dist. LEXIS 26755, at * 17 (E.D. Tex.

Feb. 27, 2017). Thus, the extent to which this factor weighs in Favor of Target is minimal.

### iv.  Practical Problems That Make a Trial Easy, Expeditious, and Inexpensive Weigh Heavily Against Transfer.

Transferring this case to the District of Minnesota will create several diseconomies. The

interest in "judicial economy can be of 'paramount consideration.'" *In re Vistaprint Ltd.*, 628

F.3d 1342, 1347 (Fed. Cir. 2010) (quoting *In re Volkswagen*, 566 F.3d at 1351). The patents

asserted against Target overlap with the related cases pending in this Court. Transferring

Target's case to the District of Minnesota may result in inconsistent findings regarding claim

construction and infringement where common software components are implicated for both

Target and other defendants. This concern is particularly acute for the case involving Walmart

because the overlap in patents is identical. Additionally, the overlap in factual issues between this and the Walmart case is nearly identical given the accused software. This Court should avoid creating a scenario where the District of Minnesota "would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Net Navigation Sys. v. Alcatel-Lucent U.S.*, 2012 U.S. Dist. LEXIS 204069, at *15 (E.D. Tex. Aug. 24, 2012).

Transferring this case to the District of Minnesota would waste judicial resources by making two different courts preside over cases involving extremely similar subject matter. *See In re Volkswagen*, 566 F.3d at 1351 (denying mandamus of an Eastern District of Texas decision denying plaintiff's motion to transfer venue because the district court's decision was "based on the rational argument that judicial economy is served by having the same district court try the cases involving the same patents"). The patents asserted against Target overlap with one or more patents asserted against the defendants in the related cases. *Compare* 4-21-cv-00092, Dkt. No. 1, *with* No. 4-21-cv-00174, Dkt. No. 1; No. 4-21-cv-00122, Dkt. No. 1; No. 4-21-cv-00123, Dkt. No. 1; No. 4-21-cv-00089, Dkt. No. 1; No. 4-21-cv-00090, Dkt. No. 1; No. 4-21-cv-00091, Dkt. No. 1; and No. 4-21-cv-00093, Dkt. No. 1. R2 Solutions asserts the '610 patent against Target, Charles Schwab, Workday, JP Morgan Chase, Fidelity, and Deezer. R2 Solutions asserts the '157 patent against Target, Deezer and Workday. R2 Solutions asserts the '329 patent against Target and Workday. "Although these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *In re Volkswagen*, 566 F.3d at 1351.

This concern is particularly acute for the case involving Walmart because Walmart does not seek transfer to the District of Minnesota. The same patents that are asserted against Target are asserted against Walmart in this Court. *See* No. 4-21-cv-00091, Dkt. No. 1. Both Target and

14

Walmart are accused of implementing portions of Hadoop and Solr software in a manner that infringes one or more of the asserted patents. *See* No. 4-21-cv-00092, Dkt. No. 1 at Exs. 4–6; No. 4-21-cv-00091, Dkt. No. 1 at Exs. 4–6. While entities can choose to implement such software in unique ways, many of the elements are the same. As the exemplary claim charts filed with the Complaint show, R2 Solutions anticipates relying on some of the same evidence to establish infringement for both Target and Walmart. *See* No. 4-21-cv-00092, Dkt. No. 1 at Exs. 4–6; No. 4-21-cv-00091, Dkt. No. 1 at Exs. 4–6. Transferring Target's case to the District of Minnesota guarantees that judicial resources will be wasted by having two different courts address nearly identical issues.

The Court can efficiently deal with the complex issues in this case by keeping the related cases together. Target's Motion may be denied on this basis alone. *See Centre One v. Vonage Holdings, Corp.*, 2009 U.S. Dist. LEXIS 69683, at *24 (E.D. Tex. Aug. 10, 2009) (holding that the defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

## III.   CONCLUSION

Target has not demonstrated that the public and private factors weigh in favor of transfer. While one of the private interest factors slightly favors transfer, the others are either neutral or weigh against transfer. Significantly, the private interest in judicial efficiency and the balance of public interest factors weigh against transfer. "Target is a very well-resourced, multinational corporation able to bear the burden of litigation in a different state." *Garnish & Gather, LLC v. Target Corp.*, 2019 U.S. Dist. LEXIS 213960, at *4 (S.D.N.Y. Dec. 9, 2019). Accordingly, this Court should deny Target's Motion to Transfer Venue to the District of Minnesota.

Dated: May 19, 2021                           Respectfully submitted,


                                              */s/ Edward R. Nelson III*
                                              **EDWARD R. NELSON III**
                                              STATE BAR NO. 00797142
                                              **BRENT N. BUMGARDNER**
                                              STATE BAR NO. 00795272
                                              **CHRISTOPHER C. GRANAGHAN**
                                              STATE BAR NO. 24078585
                                              **HILL BRAKEFIELD**
                                              STATE BAR NO. 24110604
                                              **NELSON BUMGARDNER ALBRITTON PC**
                                              3131 West 7th Street, Suite 300
                                              Fort Worth, Texas 76107
                                              817.377.9111
                                              ed@nbafirm.com
                                              brent@nbafirm.com
                                              chris@nbafirm.com
                                              hill@nbafirm.com

                                              **COUNSEL FOR**
                                              **PLAINTIFF R2 SOLUTIONS LLC**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule CV-5, I hereby certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF filing system, which will generate and send an e-mail notification of said filing to all counsel of record, on this the 19th day of May, 2021.

<u>/s/ Edward R. Nelson III</u>

## <u>CERTIFICATE OF MOTION TO SEAL</u>

Pursuant to Local Rule CV-5(a)(7), I hereby certify that a motion to seal was electronically filed with the Clerk of Court using the CM/ECF filing system on this the 19th day of May, 2021.

<u>/s/ Edward R. Nelson III</u>

17